UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

SIMONE GENOVESE,

        Plaintiff,

        -against-

GOODYEAR TIRE and RUBBER CO.,

        Defendant.
---------------------------------------------------------X

**OPINION & ORDER**
**CV-04-4505(SJF)(AKT)**

FEUERSTEIN, J.

On October 20, 2004, plaintiff Simone Genovese (plaintiff) commenced this employment discrimination action against defendant Goodyear Tire and Rubber Co. (defendant), alleging violations of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et seq*. Defendant now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing plaintiff's complaint. For the reasons stated herein, defendant's motion is granted.

I.     BACKGROUND

    A.     Factual Background[1]

        1.     Defendant's FMLA and Substance Abuse Policies

---

[1] The facts are derived from defendant's statement of material facts pursuant to Local Rule 56.1 and the accompanying declarations and other evidentiary material filed in support of defendant's motion for summary judgment, as well as plaintiff's response to defendant's statement and counterstatement of disputed material facts and the accompanying declarations and evidentiary material filed in response to the motion. The facts are undisputed unless otherwise indicated.

1

At all relevant times, one of the notices posted in defendant's Franklin Square retail store concerned employees' rights and obligations under the Family and Medical Leave Act (FMLA). In addition, defendant has a policy, which is given to all store managers and employees, relating to employees' rights and obligations under the FMLA, which provides, in pertinent part, as follows:

> Employers are prohibited from interfering with, restraining, or denying the exercise of any rights provided by FMLA. Employers are also prohibited from discriminating against associates who use FMLA leave.
>
> * * *
>
> Employers are required to post a notice explaining [FMLA's] provisions in conspicuous places where it can be seen by associates and applicants for employment. This notice will be handled in the same manner as other required postings. You should have already received the required positing. If not, attached is another copy which MUST be posted.

(Affidavit of James Fein [Fein Aff.], Exhibit [Ex.] 4).

Defendant also has a substance abuse policy, copies of which are given to employees when they are hired. Defendant's substance abuse policy provides its employees one-time access to an Alcohol and Chemical Dependency Rehabilitation Program (the rehabilitation program) at defendant's expense. (Affidavit of Barbara Toeppen-Sprigg, M.D. [Toeppen-Sprigg Aff.], Ex. 1). The substance abuse policy provides, in pertinent part, as follows:

> Associates are eligible for only one admission to the Company's * * * Rehabilitation Program at the Company's expense. * * *
>
> During the Rehabilitation Program and upon the associates' return to work following completion of the * * * Rehabilitation Program * * *, associates will be subjected to testing for the duration of the prescribed aftercare program and for twelve (12) months following completion of the prescribed aftercare program up to a combined maximum of twenty-four months. Frequency of testing following return to work will be a minimum of six tests during the first twelve (12) months

> and a minimum of three (3) tests during the second twelve (12) months. * * * **Failure to successfully complete the entire prescribed aftercare and post aftercare testing programs will subject the associate to discharge.**

(Id.) (emphasis added). According to defendant, its routine practice and procedure is that if an employee does not complete the prescribed course of treatment in a company-approved alcohol and/or chemical dependency treatment center, he or she is not eligible for continued employment and his or her employment is terminated. According to plaintiff, defendant's substance abuse policy does not state that employees failing defendant's rehabilitation program cannot complete another program at their own expense prior to returning to work.

According to defendant, every employee entering its rehabilitation program is asked to complete and sign a "Request for and Memorandum of Understanding Regarding participation in the Associate Alcohol and/or Chemical Dependency Rehabilitation Program" (the Memorandum of Understanding). (Toeppen-Sprigg Aff., Ex. 2). The Memorandum of Understanding sets forth defendant's substance abuse rehabilitation program policy described above, including that if the employee "fail[s] to successfully complete the entire prescribed aftercare and post aftercare testing programs [he or she] will be discharged," and that employees are "limited to one admission to an alcohol and/or chemical dependency rehabilitation program at [defendant's] expense." (Id.).

At all relevant times, defendant's FMLA and substance abuse policies were posted on the company's intranet, to which defendant's district manager for the Northeast District, James Fein (Fein), routinely alerted new employees, including plaintiff, during orientation.

2. Plaintiff's Employment

On May 1, 2003, plaintiff was hired as the store manager for defendant's Franklin Square retail store,[2] at which time, Fein reviewed with him all materials and policies typically reviewed with new hires in the Retail division, including defendant's substance abuse policy. Plaintiff signed a "Policy Acknowledgment" indicating that he received and read, *inter alia*, defendant's substance abuse policy. (Fein Aff., Ex. 1). Moreover, defendant's New Hire Packet, which included its substance abuse policy, was available and accessible to plaintiff during the course of his employment. One of plaintiff's duties as a store manager was to ensure that his employees were aware of and followed defendant's policies and procedures.

On March 22, 2004, upon returning to work from a vacation, plaintiff contacted Fein and told him that he could not continue working. Plaintiff immediately left the store and did not return, nor did he ever report to work for defendant thereafter. One of plaintiff's co-workers, Tom Clark (Clark), contacted Fein to discuss his erratic behavior. Fein gave Clark the phone number for IMPACT, defendant's employee assistance line, and requested that Clark provide that information to plaintiff and encourage plaintiff to use the help available to him. Plaintiff testified that he called IMPACT for help and that he became aware of defendant's substance abuse policy at that time. (Deposition of Plaintiff [Plf. Dep.], pp. 52 and 57, Defendant's Appendix of Evidence [Def. App.]. Ex. B).

Kathleen Schmidt, R.N. (Schmidt), the Global Medical Services Manager at defendant's medical facility at its world headquarters, was responsible, *inter alia*, for coordinating with

---

[2] Plaintiff had previously been employed by defendant's retail stores in the United States, then by Goodyear Canada, and had specifically requested to be re-employed by defendant in the United States.

4

IMPACT when employees contacted it for services and responding to employees regarding medical issues when they contacted defendant's medical department. In early 2004, Schmidt discussed plaintiff's substance abuse problems with plaintiff, Fein and IMPACT.

On March 24, 2004, Jeff, from IMPACT, contacted Schmidt on two occasions to confirm plaintiff's eligibility for defendant's rehabilitation program and discuss locating a treatment facility for plaintiff and to inform her that plaintiff would be contacting the Long Island Recovery Center (LIRC) to arrange admission for treatment.

On March 25, 2004, plaintiff was treated in the emergency room at Winthrop University Hospital for depression and alcohol abuse. (Declaration of Pamela J. Eisner [Eisner Aff.], Ex. F). On March 26, 2004, plaintiff checked into LIRC. (Plf. Dep., pp. 65-66; see also Eisner Decl., Ex. G).

Plaintiff checked himself out of LIRC within twenty-four hours of his admission thereto without completing the program and against medical advice, and before his signature could be obtained on the Memorandum of Understanding. According to plaintiff, he never saw the Memorandum of Understanding and he was not advised that he would be terminated if he failed to complete the particular program selected by defendant. Plaintiff maintains that he checked himself out of LIRC because it failed to administer appropriate treatment.

Several days later, Fein learned that plaintiff had been admitted to Franklin General Hospital and visited him there. Plaintiff told Fein that he would be released within several days and would return to work the following week. Plaintiff did not return to work.

On April 5, 2004, plaintiff contacted Fein and informed him that he did not feel well and could not continue to work. Fein again encouraged plaintiff to contact IMPACT. Thereafter,

Fein was unable to reach plaintiff for several days.

On April 8, 2004, plaintiff contacted Schmidt and asked her if defendant would give him a second chance to participate in the rehabilitation program. Although not required by defendant's policy, Schmidt decided to give plaintiff a second chance. Although both Jeff from IMPACT and Schmidt conducted an exhaustive search for a facility other than LIRC that could provide plaintiff appropriate treatment closer to his home, they failed to locate such a program.

On April 9, 2004, plaintiff was admitted to LIRC. (Eisner Decl., Ex. G). Within twenty-four (24) hours of his admission, plaintiff again left LIRC against medical advice. (Id.).

On April 19, 2004, plaintiff was voluntarily admitted to South Oaks Hospital (South Oaks) for depression and alcohol dependence. (Eisner Decl., Ex. I). Plaintiff was discharged from South Oaks on April 22, 2004 with aftercare arranged at Confide Counseling Center (CCC). (Id.).

Plaintiff did not contact Schmidt again until April 27, 2004, when he contacted her twice to see if he still had his job. The following day, plaintiff's brother, Salvatore Genovese (Sal), called Schmidt to request that plaintiff be provided a third chance to participate in the rehabilitation program and to advise her that he was taking plaintiff to Nassau University Medical Center for detoxification. Schmidt advised Sal that someone from defendant's Human Resources department would contact him regarding plaintiff's employment status.

Plaintiff was admitted to Nassau University Medical Center on April 29, 2004 for alcohol dependence and detoxification. (Eisner Decl., Ex. K). He was discharged the following day. (Id.).

Between each of his hospitalizations, plaintiff was drinking heavily on a daily basis. At

his deposition, plaintiff testified that he "was not able or capable of doing [his] job" between March 22, 2004 and April 19, 2004. (Plf. Dep., p. 80).

Defendant ultimately concluded that plaintiff's employment should be terminated for his failure to comply with its substance abuse policy and to fulfill the conditions for his return to work. Fein attempted to contact plaintiff on multiple occasions to arrange a meeting to discuss his termination, but plaintiff did not return his calls. Therefore, Fein sent plaintiff a letter dated April 30, 2004 terminating his employment. (Fein Aff., Ex. 8). Notwithstanding that the termination was effective May 4, 2004, defendant continued to pay plaintiff and provide him with medical benefits until May 15, 2004. Thus, plaintiff was paid his full salary and received full benefits from March 22, 2004 until May 15, 2004.

On May 7, 2004, plaintiff was admitted to White Deer Run in Allenwood, Pennsylvania for alcohol dependence and detoxification. (Eisner Decl., Ex. L). He was discharged from White Deer Run on May 22, 2004 after completing his recommended length of stay. (Id.).

Thereafter, plaintiff sent Kim Whiteman, an employee of defendant, a letter regarding his job status. (Plf. Dep., Ex. 17). In that letter, plaintiff indicated, in relevant part, as follows:

> I appreciate the fact that I was given 2 chances by [defendant] to recovery [sic], but I was too sick to realize what I was doing and that [defendant] was trying to help me. After the 2 times that I walked out on [defendant's rehabilitation] program, I tried to help myself and I had my family take me to 3 different hospitals and again I did not complete the in-patient programs.
>
> Finally on May 7[th], a friend of the family suggested to attend a facility by the name of "WHITE DEER RUN" in Allenwood, Pennsylvania, I was there for 14 days and successfully completed the program, receiving a certification of completion and paid out of pocket, there, with the help of councilors [sic] and staff I started to realize how sick I really had become.
>
> I currently attend 2 different programs; one is AA meetings 3 times a week and

> the other as an out-patient at a treatment center, called "Confide" 3 times a week as well. * * *
>
> Please give me the chance to prove myself, I welcome a probation period if you so wish. * * *

(Id.). Defendant did not reinstate plaintiff's employment.

B. Procedural Background

Plaintiff commenced the instant action on October 20, 2004, alleging, inter alia, violations of the FMLA. Specifically, plaintiff alleges, *inter alia*, that defendant terminated his employment without advising him of his right under the FMLA to a twelve (12) week medical leave. (Complaint [Compl.], ¶¶ 24-27). Defendant now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint.

II. ANALYSIS

A. Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202

(2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

B. The FMLA

Defendant contends (1) that plaintiff cannot establish that he was entitled to FMLA leave because his absences were not related to substance abuse treatment, but rather to plaintiff's ongoing abuse of alcohol; (2) that it was entitled to terminate plaintiff due to his violation of its substance abuse policy; (3) that it provided plaintiff with adequate notice of his FMLA rights; and (4) that even assuming it did not provide adequate notice, plaintiff cannot demonstrate how he was harmed by its omission.

The FMLA entitles eligible employees to twelve (12) workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA provides that at the end of an employee's leave he or she has the right to return to the position he or she held before the leave, or an equivalent position, see 29 U.S.C. § 2614, although this right is not absolute. See 29

C.F.R. 825.214(b). Accordingly, two distinct rights are granted to eligible employees under the FMLA: (1) the right to take leave for the treatment of a serious health condition, 29 U.S.C. § 2612(a)(1), and (2) the right to be reinstated to his or her former position or an equivalent thereof at the end of the leave, 29 U.S.C. § 2614(a). See Geromanos v. Columbia Univ., 322 F.Supp.2d 420, 427 (S.D.N.Y. 2004).

The FMLA "'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 174 (2d Cir. 2006) (quoting Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 724-725, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003)). The Second Circuit recognizes a distinction between FMLA "interference" claims, whereby the plaintiff alleges that the defendant interfered with the exercise of his or her rights given by the FMLA in violation of 29 U.S.C. § 2615(a)(1), and FMLA "retaliation" claims, whereby the plaintiff alleges that the defendant retaliated against him or her for making use of his or her rights under the FMLA. See Sista, 445 F.3d at 175-176; Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004). For FMLA retaliation claims, where the employer's intent is material to the claim, courts in this Circuit apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), pursuant to which a plaintiff must establish a prima facie case, the employer must offer a legitimate non-discriminatory reason for the adverse employment action, and the plaintiff must then prove that the proffered reason is pretextual. See Sista, 445 F.3d at 175-176. For FMLA interference claims, "the question is simply whether the employer in some manner impeded the

employee's exercise of his or her right," and, thus, the McDonnell Douglas analysis is inapplicable. See id. Plaintiff only asserts an FMLA interference claim.

In order to establish a prima facie interference claim, a plaintiff must demonstrate (1) that her or she is an "eligible employee" under the FMLA; (2) that the defendant is an "employer" as defined in the FMLA; (3) that he or she was entitled to leave under the FMLA; (4) that he or she gave notice to the defendant of his or her intention to take leave; and (5) that he or she was denied benefits to which he or she was otherwise entitled under the FMLA. See Esser v. Rainbow Advertising Sales Corp., 448 F.Supp.2d 574, 580 (S.D.N.Y. 2006); Moore v. Potter, 353 F.Supp.2d 410, 414 (E.D.N.Y. 2005). The first two elements are not in dispute.

Substance abuse requiring rehabilitation can constitute a "serious health condition" under the FMLA. 29 C.F.R. § 825.112(g) provides, in relevant part, that

> FMLA leave is available for treatment for substance abuse provided the conditions of § 825.114 are met. However, treatment for substance abuse does not prevent an employer from taking employment action against an employee. The employer may not take action against the employee because the employee has exercised his or her right to take FMLA leave for treatment. *However, if the employer has an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave.* * * * (emphasis added).

In addition, 29 C.F.R. § 114(d) provides that

> Substance abuse may be a serious health condition if the conditions of this section are met. However, FMLA leave may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider. On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave.

Thus, although the FMLA provides for medical leave to seek substance abuse treatment under

11

some circumstances, it also permits termination of an employee with a substance abuse problem under some circumstances.

The "FMLA was not intended to provide employees with a greater right to reinstatement of other benefits than they would have had if they had been continuously employed during the FMLA leave period. * * * FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." Geromanos, 322 F.Supp.2d at 429 (internal quotations and citations omitted). Plaintiff's continued employment was conditioned upon his completion of the prescribed course of treatment in a company-approved alcohol dependency treatment center. As the evidence demonstrates that plaintiff did not satisfactorily complete defendant's approved rehabilitation program at LIRC, despite be given two (2) opportunities to do so, plaintiff was not entitled to reinstatement at the conclusion of his leave and he was not denied any benefit afforded him under the FMLA. See, e.g. Geromanos, 322 F.Supp.2d at 429 (granting summary judgment dismissing plaintiff's FMLA interference claim on the basis, *inter alia*, that plaintiff was not entitled to reinstatement at the conclusion of her leave because her continued employment was conditioned upon her completion of an accredited substance abuse treatment program, which she did not satisfactorily complete); Smith v. Eastman Kodak Co., No. 95-4677, 1999 WL 33327051, at * 6 (D.N.J. Oct. 7, 1999) (holding that the plaintiff relinquished any right to FMLA benefits or reinstatement by violating the defendant's substance abuse policy when he failed to participate in the follow-up out-patient treatment program following his completion of the defendant-approved in-patient program). Further, plaintiff's failure to abide by the terms of the defendant's established substance abuse policy, which was undisputedly communicated to all employees

when they were hired, posted on the defendant's intranet and communicated specifically to plaintiff, at the latest, when he called defendant's IMPACT line for help, and absent any evidence that the policy was applied in a discriminatory manner toward plaintiff, was a legitimate ground for terminating him. Thus, plaintiff cannot establish a prima facie interference claim under the FMLA.

Moreover, a failure to notify an employee of FMLA rights and procedures does not, in and of itself, constitute an interference with the exercise of those rights absent evidence that the lack of notice caused the employee to forfeit FMLA leave. Geromanos, 322 F.Supp.2d at 430. The undisputed evidence in this case establishes that defendant adequately posted FMLA rights and procedures in its Franklin Square store, in its written policy given to all employees and store managers and on its intranet. Accordingly, plaintiff has not established that defendant interfered with his FMLA rights by failing to provide him with adequate notice of those rights. See, e.g. Geromanos, 322 F.Supp.2d at 430-431 (finding that plaintiff had notice of the defendant's FMLA policy because it appeared in the defendant's online employee handbook). In any event, the record is bereft of any evidence from which it can be inferred that any lack of notice of his FMLA rights caused plaintiff to forfeit those rights or affected his ability to take leave in any way.

III. CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed in its entirety. The clerk of the Court is directed to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 18, 2007
       Central Islip, New York

Copies to:

Frank & Associates, P.C.
500 Bi-County Boulevard, Suite 112N
Farmingdale, New York 11735

Brouse McDowell
388 South Main Street, Suite 500
Akron, Ohio 44311

Stewart Occhipinti, LLP
1350 Broadway, Suite 2200
New York, New York 10018